# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

UNITED STATES OF AMERICA and GOVERNMENT OF THE VIRGIN ISLANDS,

Plaintiffs,

v.

ZACHEAUS BLAKE,

Defendant.

CRIM. NO. 2006-0030

## MEMORANDUM OPINION

Finch, Senior Judge.

THIS MATTER comes before the Court on the Motion for Judgment of Acquittal filed by Defendant Zacheaus Blake. Blake moves for acquittal on Counts 4 and 6 charging him with possession, or aiding and abetting Defendants Kalif Berry and St. Clair Liburd in the possession of, cocaine base (crack) with intent to distribute. He likewise seeks acquittal on Counts 5 and 7 charging him with possession, or aiding and abetting these same two Defendants in the possession of cocaine hydrochloride (cocaine powder) with intent to distribute.

There are four firearms charges for which Blake also pursues acquittal. The jury found Blake guilty of unauthorized possession of firearms found at 146 Barren Spot and 84 Cane as charged in Counts 14 and 18, respectively. The jury additionally found Blake guilty of Counts 13 and 17 charging him with possessing these firearms in furtherance of drug-trafficking activities.

Not only will the Court review the sufficiency of the evidence to determine whether the jury's verdict can be upheld as to these counts, the Court will also consider whether Blake's conviction on Count 10 charging misprision of felony should stand.

**I. Standard of Review**

Review of the sufficiency of evidence supporting a conviction is "highly deferential." United States v. Hart, 273 F.3d 363, 371 (3d Cir. 2001) (citation omitted). The Court "must determine whether the evidence submitted at trial, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." Hart, 273 F.3d at 371 (quotation omitted). "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." United States v. Iafelice, 978 F.2d 92, 94 (3d Cir. 1992) (quotation omitted). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt," may the Court overturn the jury's verdict. United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1990) (quotation omitted).

"To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilty." United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990) (quotation omitted). "There is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." Iafelice, 978 F.2d at 97. All issues of credibility are within the province of the jury. Gonzalez, 918 F.2d at 1132.

The Court views the totality of the circumstances when examining the sufficiency of the evidence. United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984). "The prosecution may fulfill its burden of proving the elements of a crime through circumstantial evidence." Paez v. O'Lone 772 F.2d 1158, 1160 (3d Cir. 1985); see Jackson v. Virginia, 443 U.S. 307, 324-25 (1979) (finding that necessary intent was proven beyond a reasonable doubt through circumstantial

evidence); see also Leon, 739 F.2d at 891 (finding that record had sufficient circumstantial evidence for jury to find defendant guilty of aiding and abetting substantive crimes charged). "It is not unusual that the government will not have direct evidence. Knowledge is often proven by circumstances. A case can be built against the defendant grain-by-grain until the scale finally tips; and considering all the facts and drawing upon rational inferences therefrom, a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime for which he is charged." Iafelice, 978 F.2d at 98. "Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred. The fact that evidence is circumstantial does not make it less probative than direct evidence." McNeill, 887 F.2d at 450 (citation omitted).

"The prosecution must prove every element of a crime charged beyond a reasonable doubt. . . ." Government of the Virgin Islands v. Smith, 949 F.2d 677, 682 (3d Cir. 1991). "[D]iminishing this burden violates a defendant's right to due process." Id. On a post-trial motion for acquittal based on the insufficiency of the evidence, the Court must determine whether there is substantial evidence, direct or circumstantial, with logical inferences drawn in the light most favorable to the government, from which a reasonably jury could have found beyond a reasonable doubt that the government proved all the elements of the offense. See United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991).

## II.     Analysis

### A.     Counts 4 and 6 – Aiding and Abetting Possession of Crack Cocaine with Intent to Distribute

On the afternoon of October 15, 2005, Berry called Blake and asked him to find Winston Samuel, and to bring Samuel and a couple of boxes of baking soda.  Later in the day, law enforcement officers observed Berry and Liburd enter a hotel room at Club St. Croix.  After a period of time Samuel and Liburd were seen leaving the hotel room and getting into a vehicle.  Law enforcement officers searched the vehicle and found cocaine powder and 545 grams of crack.  When Berry came into view, soon after, he fled and dropped a bag containing 75 grams of crack and 19 grams of powder cocaine as he ran.

Although the evidence was insufficient to show that Blake ever actually possessed the crack cocaine for which he was charged in Counts 4 and 6, Blake is also charged as an aider and abettor under 18 U.S.C. § 2.  "[T]o establish the offense of aiding and abetting, the Government must prove two elements: that the substantive crime has been committed and that the defendant knew of the crime and attempted to facilitate it." United States v. Frorup, 963 F.2d 41, 43 (3d Cir. 1992).

The evidence showed that baking soda is used as an ingredient for preparing crack cocaine and the jury could reasonably infer that Samuel's role was to "cook" the crack cocaine.  Blake aided Berry in manufacturing the crack cocaine by providing him with baking soda and an individual to prepare the crack cocaine.  That Blake may not have known where Berry intended to "cook" the crack is immaterial, since location is not an element of the substantive crime.  Blake abetted Samuel in preparing the crack cocaine, by finding him so that he would be able to

combine the baking soda Blake supplied with another key ingredient of crack, the cocaine powder that the jury could infer Berry provided. From recorded conversations and sums of money recovered, the jury could reasonably conclude that the crack cocaine was intended to be distributed.

Blake knew that Berry planned to possess crack cocaine for distribution and aided and abetted in that crime, which manifested itself in the crack the Berry discarded in his attempt to escape arrest. The jury could also have reasonably inferred that Blake knew that Samuel, as the "cook," would also possess crack cocaine with intent to distribute it after he finished preparing it. Thus, Blake also aided and abetted in the possession of the crack that was found in the vehicle. Therefore, there is substantial evidence supporting Blake's guilty verdict as to Counts 4 and 6.

B. Count 7– Aiding and Abetting Possession of Cocaine Powder with Intent to Distribute by the Bridge Walkway at Club St. Croix

In Count 7, Blake is charged with possession of, or aiding and abetting the possession of, the cocaine powder that Berry discarded when he saw the police. There is no evidence that Blake actually or constructively possessed this cocaine powder. However, conversations were recorded on October 6, 2005 in which Berry asked Blake to contact Defendant Blaine Claxton to bring "five plate of food," Blake did so, and then called Berry to confirm that Claxton would bring the plates "down." A law enforcement officer testified that a "plate" is a slang term for a measurement of drugs. When law enforcement officer found what Berry referred to as "four plate a food," each "plate" was a kilo of cocaine powder.

Thus, the jury could infer that the "five plate of food" that Blake arranged for Claxton to bring "down," were five kilos of cocaine powder. The jury could also find that the cocaine

powder that Berry discarded was a portion of that five kilos of cocaine powder. Because Blake assisted Berry in obtaining the cocaine powder from Claxton, Blake aided and abetted Berry in his possession of that cocaine powder. From the quantity of cocaine powder, as well as other recorded conversations, it is evident that Blake and Berry intended the cocaine powder to be distributed. Therefore, the motion for judgment of acquittal is denied as to Count 7.

    C.    Count 5 – Aiding and Abetting Possession of Cocaine Powder with Intent to Distribute in the Mirage at Club St. Croix

Although the jury could draw the further inference that the cocaine powder that was found in the Mitsubishi Mirage was a portion of the same five kilos that Blake arranged with Claxton to reach Berry, there is no evidence to suggest that Blake knew that Berry would give or sell Samuel any of his cocaine powder. There is no evidence to suggest that Blake knew that Liburd would be involved in the crack cooking operation.

While Blake knew that Samuel would need access to cocaine powder to make the crack, since cocaine powder is a component ingredient of crack cocaine, he did not assist or bring about Samuel's possession of any cocaine powder. Thus, while the substantive crime of possession of cocaine powder with intent to distribute was committed, and Blake must have known about it from his own "cooking" experience, there is no evidence that Blake did anything to facilitate Liburd or Samuel in possessing cocaine powder in the Mitsubishi Mirage. Therefore, Blake is acquitted of Counts 5.

    D.    Counts 14 – Unauthorized Possession of Firearms

The jury found Blake guilty of possessing two .40 caliber handguns on October 17, 2005, or aiding and abetting his sister, Karen Blake, in such possession, in violation of 14 V.I.C. §

2253(a).  On October 17, 2005, law enforcement officers found two loaded guns in a bedroom closet in Karen Blake's house.  From the recorded conversations between Zacheaus Blake and another sister, Carmen Ferdinand the jury could reasonably infer that the guns belonged to Blake. Blake held conversations with Ferdinand and Defendant Blaine Claxton from which a jury could find that Karen Blake hid the guns in the closet for Blake or allowed him to hide them there.

"Conviction under [section 2253(a)] requires proof that a defendant possessed a firearm and that such possession was without authority of law." Hunt v. Government of Virgin Islands, 2005 WL 627798, at *2 (D.V.I. App. Div. Mar. 14, 2005).   "[U]nder the law of the Virgin Islands . . . the firearm must be operable." United States v. Blyden, 740 F. Supp. 376, 380 (D.V.I. 1990).

There was sufficient evidence for the jury to find that Blake possessed the firearms in that he hid them in a bedroom of Karen Blake's house or had Karen Blake hide them there. Evidence was adduced to show that Blake did not have a firearms license.  The Government showed that the guns had been fired, and therefore, were operable.  Thus, the Government introduced substantial evidence from which a jury could determine beyond a reasonable doubt that each of the elements of unauthorized possession of the two firearms described in Count 14 had been met.

    E.    Count 18 – Unauthorized Possession of a Firearm

The jury found Blake guilty of possessing or aiding and abetting Delma Matthew in possession of, a .38 caliber pistol on October 17, 2005. The evidence showed that on October 17, 2005, Blake called Matthew and told her to remove a gun and money from his mother's house. Law enforcement officers who listened to the call immediately went to Blake's mother's house

where they found Matthew with a gun.

The jury could reasonable infer that the gun belonged to Blake. The gun was test-fired and found to be operable. Thus, substantial evidence supported the jury's guilty verdict.

  F. Counts 13 and 17 – Possession of Firearms in Furtherance of Drug-Trafficking Crime

Blake was found guilty of possessing, or aiding and abetting possession of, firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). "[M]ere presence of a weapon at the scene of a drug crime, *without more*, is insufficient to prove that the gun was possessed 'in furtherance of' the drug crime." United States v. Hector, 474 F.3d 1150, 1157 (9th Cir. 2007) (quotation omitted). The Government must show a "*specific* 'nexus' between the *particular* firearm and the *particular* drug crime at issue." Id. "[T]he government must present a viable theory as to how the gun furthered the drug possession or distribution." Id. (quotation omitted). In reviewing the evidence connecting the firearm to the drug crime, the Court looks at the totality of the circumstances. Id.

There is no evidence to suggest that the firearms were hidden at Blake's sister's or mother's houses to protect Blake's "cooking" operation, storage of controlled substances, or the drug proceeds. The evidence does not show that any distribution of controlled substances was performed at or near Karen Blake's or Blake's mother's houses.

Moreover, the firearms at Karen Blake's house were found in a bedroom closet. They were not within easy reach for use during drug-trafficking activities. "[T]he presence of a firearm in some proximity to collateral products of a drug crime but far from the locus of drug activities does not establish the requisite nexus." Untied State v. Rios, 448 F.3d 1009, 1015 (9th

Cir. 2006) ("Whether the requisite nexus is present may be determined by examining, inter alia, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities."). That the firearms were not strategically located further demonstrates a lack of connection between the firearms and the drug trafficking activities.

Because the nexus between the drug trafficking activities and the possession of the firearms has not been established, the motion for judgment of acquittal is granted as to Count 13 and 17.

      G.    Counts 10 –  Misprision of a Felony

"Concealment of crime has been condemned throughout our history." Roberts v. United States, 445 U.S. 552, 557 (1980). The first Congress of the United States enacted a misprision statute. Id. The elements of misprision of a felony are "(1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime." United States v. Gebbie, 294 F.3d 540, 544 (3d Cir. 2002). "[G]ross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship." Roberts, 445 U.S. at 558.

Count 10 charges Blake with willfully concealing a controlled substance at Karen Blake's residence or aiding and abetting Karen Blake and Berry in concealing such controlled substance on October 16, 2005. The controlled substance that is described in Count 10 is the same controlled substance that the jury found Blake guilty of possession of, or aiding and abetting possession of, with intent to distribute in Count 8. The only controlled substance that the jury learned was concealed on or about October 16, 2005 was the four kilos of cocaine powder found hidden in a room adjacent to Karen Blake's main house.

Courts have held that a person who would otherwise be guilty of misprision, but whose disclosure would be self incriminatory is protected from punishment by the Fifth Amendment. See United States v. Jennings, 603 F.2d 650, 652-653 (7th Cir. 1979); United States v. Kuh, 541 F.2d 672, 677 (7th Cir. 1976); United v. King, 402 F.2d 694, 697 (9th Cir. 1968); see also United States v. Caraballo-Rodriguez, 480 F.3d 62, 72 (1st Cir. 2007) (recognizing that "[w]here the person with knowledge of the underlying crime is also involved in the crime, there are tensions between the Fifth Amendment privilege against self-incrimination and the statutory obligation to provide disclosure"). "The privilege guaranteed by the Fifth Amendment not only extends to statements that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the individual for a crime, provided such individual has reasonable cause to fear he might thereby be convicted of that crime." King, 402 F.2d at 697. A conviction cannot stand when "[t]he factual allegations . . . are sufficient to engender in the defendants reasonable cause to believe that disclosing information as to their knowledge of the (underlying 'actual commission of a felony') would place them in the position of furnishing the government with evidence that could lead to their prosecution or conviction." Kuh, 541 F.2d at 677.

The Supreme Court recognizes this exception to the "citizen's duty to raise the hue and cry and report felonies to the authorities:"

> This deeply rooted social obligation is not diminished when the witness to crime is involved in illicit activities himself. Unless his silence is protected by the privilege against self-incrimination, . . . the criminal defendant no less than any other citizen is obliged to assist the authorities.

Roberts, 445 U.S. at 558 (quotation omitted).

In United States v. Jennings, 603 F.2d 650, 652 (7th Cir. 1979), the government argued

that because defendants did not participate in a particular drug sale, they would not have incriminated themselves by reporting it. The court reasoned that the Government failed to consider "that defendants reasonably could have believed that their official report of the . . . narcotics sale, and the event surrounding it, could have led to their prosecution and conviction of other, related criminal activities they did participate in." Id. The disclosure of the narcotics sale "would have provided a link in the chain of evidence which could have led to defendants' prosecution and conviction." Id. at 653.

Blake had reasonable cause to believe that if he had reported to the authorities that he had hidden cocaine powder on his sister's property, he would be prosecuted for possession of, or aiding and abetting the possession of, the cocaine powder with intent to distribute or for other crimes. Indeed, the jury found him guilty of possession of cocaine powder with intent to distribute, based in part, on the concealed cocaine powder. To subject Blake to criminal liability for failing to report and concealing crimes, when such disclosure would have led to his own prosecution and conviction violates his Fifth Amendment right against self-incrimination.

Because Blake did not have a duty to notify authorities of the cocaine powder in view of his constitutional privilege against self-incrimination, his conviction of misprision of felon cannot be upheld. Accordingly, Blake is acquitted of Count 10.

## III. Conclusion

Blake moved for acquittal on eight counts. For the reasons stated, the Court denies the motion for acquittal as to Counts 4 and 6 charging him with aiding and abetting two instances of possession of crack cocaine with intent to distribute, Count 7, charging him with aiding and abetting in the possession of cocaine powder with intent to distribute, and Counts 14 and 18

charging him with unauthorized possession of firearms. The motion for acquittal is granted as to Count 5, charging Blake with possession of cocaine powder with intent to distribute, and Counts 13 and 17, charging him with possession of firearms in furtherance of drug-trafficking crime. The Court also acquits Blake for misprision of felony, as conflicting with his Fifth Amendment right against self-incrimination.

ENTER:

DATE: April 29, 2009

_______/s/_____________________
RAYMOND L. FINCH
SENIOR DISTRICT JUDGE